IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN CAVER, | : | |
|    Petitioner, | : | |
| | : | No. 1:19-cv-1767 |
| v. | : | |
| | : | (Judge Rambo) |
| SCOTT FINLEY, | : | |
|    Respondent. | : | |

## **MEMORANDUM**

On October 9, 2019, *pro se* Petitioner Calvin Caver ("Caver"), who is currently confined at the Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Caver challenges the decision of a Disciplinary Hearing Officer ("DHO") who found him guilty of a violation of Code 113, possession of any narcotics not prescribed for the individual by medical staff. (*Id.*) After Caver paid the requisite filing fee, the Court directed Respondent to show cause why Caver should not receive the relief he seeks. (Doc. No. 4.) Respondent filed a response on November 18, 2019. (Doc. No. 6.) Caver filed his traverse on December 2, 2019. (Doc. No. 7.) Accordingly, his § 2241 petition is ripe for disposition. For the following reasons, Caver's § 2241 petition will be denied.

## I. BACKGROUND

On March 27, 2019, at approximately 7:15 p.m., Officer Mazur conducted a random search of cell 217, Caver's cell, in Unit 2A. (Doc. No. 6-2 at 7-8, 7, 15, 27.) Officer Mazur located two (2) square pieces of paper, measuring two (2) inches by two (2) inches, suspected to have been sprayed, hidden in the cap of a commissary medication bottle in Caver's secured locker. (*Id.* at 7-8, 11, 19-22, 23.) In his memorandum, Officer Mazur noted that the paper was white. (*Id.* at 19.)

On March 28, 2019, after testing results indicated that the paper had tested positive for amphetamines, SIS Technician R. Price completed Incident Report 3239022, charging Caver with a violation of Code 113, possession of any narcotics not prescribed to the individual by medical staff. (*Id.* at 11.) In the Incident Report, Officer Price described the paper as "light blue card stock" with "grid lines along the edges of the squares drawn with a blue pen." (*Id.*) A copy of the Incident Report was delivered to Caver that same day. (*Id.*) Caver was advised of his rights, including his right to remain silent. (*Id.* at 12.) Caver indicated that he understood his rights and stated: "My celli had nothing to do with that. It was found in my locker. It is my responsibility." (*Id.*)

On April 3, 2019, Caver appeared before the Unit Discipline Committee ("UDC"). (*Id.* at 11.) The UDC referred the Incident Report to the DHO for further

proceedings based on the seriousness of the offense. (*Id.*) Caver signed an acknowledgment of his receipt of the Inmate Rights at Discipline Hearing form and Notice of Discipline Hearing Before the DHO and indicated that he did not want a staff representative and that he had no witnesses he wished to call on his behalf. (*Id.* at 13-14.) Caver advised, however, that he would be submitting a written statement. (*Id.* at 11.) In this statement, Caver took issue with Officer Price issuing the Incident Report, suggested that other inmates could be responsible because they had previously placed contraband in his cell, and requested that Officer Mazur appear as a witness. (*Id.* at 7, 15-31.)

On April 9, 2019, Caver appeared before the DHO. (*Id.* at 5.) Caver submitted another written statement, alleging that the UDC had refused to consider whether he wished to have a staff representative or witnesses appear on his behalf. (*Id.* at 6-7, 17-18.) At the DHO hearing, Caver waived his right to a staff representative but requested to call Officer Mazur as a witness. (*Id.* at 5, 7.) The DHO denied Caver's request to cross-examine Officer Mazur but did consider Officer Mazur's memorandum. (*Id.* at 7.)

The DHO found the charge of Code 113 to be supported by the greater weight of the evidence. (*Id.* at 7-9.) In doing so, the DHO considered the Incident Report, Officer Mazur's memorandum, photographs of the contraband found in Caver's

3

secured locker, and the NIK test results indicating that the paper tested positive for amphetamines. (*Id.*) The DHO assigned greater weight to the reporting officer's written statement than to Caver's claim that he was not aware that the narcotics were in his locker. (*Id.* at 8.) The DHO gave "very little weight" to Caver's claim that other inmates placed the narcotics in his locker, noting that, when asked, Caver was "unwilling to inform the DHO who [he] suspected" had done so. (*Id.*) The DHO also rejected Caver's arguments that Officer Price should not have written the Incident Report and that due process was not satisfied because his unit team did not conduct the UDC hearing. (*Id.* at 8-9.)

The DHO sanctioned Caver with disallowance of forty-one (41) days of good conduct time, thirty (30) days of disciplinary segregation, and six (6) months' loss of commissary, telephone, and visiting privileges. (*Id.* at 9.) The DHO issued his report on April 30, 2019, and a copy was delivered to Caver on May 1, 2019. (*Id.* at 10.) Caver subsequently exhausted his administrative appeals regarding this Incident Report. (Doc. No. 6 at 6 n.1.)

Caver then filed the instant § 2241 petition. In his petition, Caver argues that his due process rights were violated because: (1) the DHO did not give "meaningful consideration" to his exculpatory position that other inmates placed the narcotics in his locker because he had previously found a USB cord and Allen tool in his cell and

4

that these items had been placed there by other inmates; (2) the DHO suppressed favorable evidence in the form of Officer Mazur's memorandum; and (3) the DHO denied Caver's request to cross-examine Officer Mazur regarding his memorandum. (Doc. No. 1 at 5-11.) As relief, Caver requests that the Court hold a hearing and then void the DHO's decision and expunge the Incident Report. (*Id.* at 11.)

## II. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Caver's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the

5

disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in

which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### A. Caver Received His Due Process Rights

Contrary to Caver's arguments, he received his procedural due process rights under *Wolff* and the BOP regulations. The record reflects that Caver received a copy of the Incident Report on March 28, 2019, and the hearing before the DHO was held on April 9, 2019. (Doc. No. 6-2 at 5, 11.) Caver chose to proceed without a staff representative. (*Id.* at 5, 7.) He received a copy of the DHO's written decision,

8

which included a review of the evidence relied upon and the rationale behind the disciplinary action, on May 1, 2019. (*Id.* at 10.)

In his § 2241 petition, Caver suggests that his due process rights were violated when the DHO suppressed exculpatory evidence in the form of Officer Mazur's memorandum, which stated that the confiscated paper was white, and when the DHO denied his request to have Officer Mazur appear as a witness. (Doc. No. 1 at 5-11.) With respect to his claim regarding the suppression of exculpatory evidence, the United States Court of Appeals for the Third Circuit has noted that the "[United States Court of Appeals for the] Seventh Circuit . . . has held that the rule of *Brady v. Maryland* requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings." *Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981)). As an initial matter, the record reflects that the DHO did consider Officer Mazur's memorandum. In any event, the discrepancy regarding the color of the paper is not material exculpatory evidence. Caver does not dispute that the photographs of the allergy pill bottle and the paper found within, which tested positive for amphetamines, was found in his locker. Moreover, he does not dispute the chain of custody log, which reflects that the allergy pill bottle and paper were passed from Officer Mazur, to Officer Tomlinson for placement in the overnight drop box, to

9

Officer Price for testing. (Doc. No. 6-2 at 27.) Thus, Caver's claim that exculpatory evidence was suppressed lacks merit.

Caver also suggests that his due process rights were violated when the DHO refused to allow Officer Mazur to appear as a witness. Inmates, however, do not have an "unqualified right to call witnesses." *Wolff*, 418 U.S. at 566. While not required, "it would be useful for the [DHO] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* Here, the DHO denied Caver's request to have Officer Mazur appear as a witness because "his account of the events of the incident are included in his supporting memorandum." (Doc. No. 6-2 at 7.) Moreover, even if Officer Mazur had appeared, the DHO would not have been required to permit Caver to cross-examine him. *See Guerrero v. Recktenwald*, 542 F. App'x 161, 164 (3d Cir. 2013). The Court, therefore, concludes that the DHO's refusal to call Officer Mazur did not deprive Caver of his right to due process. *See Kenney v. Lewisburg*, 640 F. App'x 136, 139 (3d Cir. 2016) (upholding district court's conclusion that failure to call an officer as a witness did not violate due process because the DHO stated that the officer had documented his eyewitness account in a memorandum and would have been an adverse witness). For these reasons, the Court finds that Caver received all the due process procedures to which he was entitled.

**B.     The DHO's Decision Was Based on Sufficient Evidence**

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO Report, Caver's written statements, the photographs of the recovered narcotics, Officer Mazur's memorandum, and the chain of custody log. (Doc. No. 6-2.) These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his decision finding Caver guilty of Code 113, possession of narcotics not prescribed for the individual by medical staff:

> The DHO finds you committed the prohibited act code 113, Possession of any narcotics, while incarcerated at FCI Schuylkill on 03/28/2019, at approximately 11:05 AM, when staff discovered sprayed paper that was discovered in your secured locker tested positive for the presence of narcotic substance amphetamines.
>
> The DHO relied on the written report of P. Price, SIS Technician, wherein he reports the following: On March 28, 2019, at approximately 11:00 AM, I tested suspected sprayed paper that was recovered by Correctional Officer M. Mazur on March 27, 2019 at approximately 7:15 PM. Mazur discovered the items during a random search of cell 217 in unit 2A. Specifically, during the search, Mazur recovered two 2.0" x 2.0" square pieces of suspected sprayed paper inside the secured locker of inmate Caver, Calvin, Reg. No. 54496-060. Inmate Caver and inmate [redacted] were assigned to cell 217 in unit 2A at the time of the search. The two pieces of suspected sprayed paper Officer Mazur found were concealed inside a commissary issued medication bottle cap. The cap was discovered on a shelf inside the secured locker, with mail that documents inmate Caver's name and register number. The two square pieces of suspected sprayed paper consisted of light blue card stock, and had grid lines along the edges of the squares drawn with a blue pen. These grid lines permit the suspected sprayed paper to be

11

cut equally for potential distribution. I tested the substance with NIK test kit A, resulting in a positive test for amphetamine (orange to brown color). I proceeded to test U, resulting in a positive test for amphetamine (burgundy color). This combination of results provides a positive identification of amphetamines being present in the tested time.

The DHO also relied on the memorandum of the officer who discovered your narcotics, and the photographs of the narcotics you possessed.

You denied the charge, and presented as your defense that you are "responsible and your cellmate is not responsible"; that the reporting officer should not have written the incident report because he was not present at the time . . . the narcotics were discovered in your locker; that you were not aware the narcotics were in your locker; that other inmates placed the narcotics in your locker; that you could not determine if you locked your locker; that your unit team did not conduct the UDC; that the UDC did not inquire if you wanted witnesses or a staff representative; that your custody classification "points were going to drop", and; that the incident report should be expunged.

The DHO gave greater weight to the reporting officer's written statement that sprayed paper that was discovered in your secured locker tested positive for the presence of the narcotic substance amphetamines, than to your claim that you were not aware the narcotics were in your locker. This is based on the fact the reporting officer was very specific concerning your misconduct in section 11 of the incident report. Information in section 11 of the incident report provides you notice you had any narcotics under your dominion, and therefore in your control.

Your claim that you were not aware the narcotics were in your locker was found without merit. The DHO considers this information to be less credible than to which the greater weight is given in this case for the following reasons: You submitted contradictory verbal testimony where you informed the DHO you are "responsible and your cellmate is not responsible." Your locker was secured prior to the search, leaving no evidence to convince this DHO this contraband

belonged to anyone other than yourself.  You concealed your narcotics inside a medicine bottle cap which demonstrates your determination for your narcotics not to be easily discovered by staff.

Your claim that other inmates placed the narcotics in your locker was given very little weight in your defense.  Particularly, in your written statement you stated you "battled with quarrels with some inmates known for such devious acts", but when the DHO inquired who these inmates were, you were unwilling to inform the DHO who you suspected placed the narcotics in your locker.  What was discovered hidden in the bottle cap in your locker was a relatively large, valuable amount of narcotics.  This information discounts your claim other inmates placed these valuable narcotics in your locker.  That you hid the narcotics in the bottle cap demonstrates you coveted these narcotics as your own, you did not wish for them to be discovered, and discounts your claim someone else put the narcotics in your locker.  You informed the DHO that you could not determine if you locked your locker, but the DHO gives greater weight of the evidence to the reporting officer's claim that your locker was secured at the time your narcotics were discovered therein.

Your claim that the reporting officer should not have written the incident report in no way discounts your culpability [of] your commission of the prohibited act.  The reporting officer was the staff member who became aware of your misconduct; he appropriately wrote the incident report.  The reporting officer effectively annotated that he reasonably believed you possessed the narcotics in your secured locker.  The description of the incident contains all facts known by the reporting officer, to include physical evidence where he arrived to his conclusion you possessed the narcotics.  The description of the incident provides you with the specific evidence the reporting officer relied upon, and charged you appropriately based on the evidence, in order for you to prepare a defense.  Your claim the reporting officer should not have written the incident report, is recognized by the DHO as your misguided attempt to justify a false due process violation claim, when such a violation does not exist.

The DHO has considered your statement that your unit team did not conduct the UDC hearing, but informed you a UDC certified staff member held the initial review of the incident report as required by policy, before the report was to be referred to the DHO. No requirement exists that your assigned unit team conduct this initial review. Your claim that your unit team did not conduct the UDC hearing is recognized by the DHO as your misguided attempt to justify a false due process violation claim, when such a claim does not exist.

No information was discovered to support your claim that the UDC did not inquire if you wanted witnesses or a staff representative. The Notice of Discipline Hearing Before the DHO form verifies you signed the form stating you did not request a staff representative or witnesses. Suspiciously, you admitted submitted a written statement to the UDC, that you prepared prior to the UDC hearing, where you did request a staff witness. Moreover, you submitted an additional written statement at the time of the DHO hearing citing the UDC did not consider your request for a staff representative or a witness. At the time of the DHO hearing, the DHO asked you if you wished to have a staff representative present for the DHO hearing. You informed the DHO you did not wish to have a staff representative present. At the time of the DHO hearing, you reiterated you wished only to call officer Mazur as a witness. The DHO denied your request to have officer Mazur appear to provide a witness statement, as his account of the events of the incident are included in his supporting memorandum, and in section 11 of the incident report. Your suspicious claim you were denied a staff representative of a witness, is recognized by the DHO as your misguided attempt to justify a false due process violation claim, when such a violation does not exist.

The DHO considered your testimony concerning these unsubstantiated due process violation claims, and is not convinced you are being honest or forthright in your testimony. Your unsubstantiated due process violation claims are not relevant to your commission of the prohibited act as documented in section 11 of the incident report, and do not discount your culpability in your commission of the prohibited act in this case.

> Your claim that your custody classification "points were going to drop" prior to your receipt of this incident report, is interpreted as your complaint the incident report will negatively affect your consideration for a lesser security custody classification. Your statement is considered by the DHO as your motivation to be less than honest in your testimony to the DHO. The DHO recognizes if he sustains this incident report it would negatively affect your consideration for a lesser security custody classification score. The DHO notes that if he expunged the charge, you would stand to receive the lesser security custody classification. The DHO feels you provided the DHO with inaccurate information, you convoluted the circumstances in the report, and you erroneously suggested various due process violations occurred, all in order for you to not accept full responsibility for your actions.
>
> The DHO concludes you are responsible for your actions. The substance of the facts provided by the staff members in this case are strong. You have presented very little evidence to convince this DHO you did not commit the prohibited act. Your contention about not having knowledge of the contraband discovered in your living quarter was found without merit. Since you are assigned to the cell, you alone are responsible for keeping your living quarter free of contraband. Furthermore, the reporting officer clearly stated that your locker was secured prior to his search, leaving no evidence to convince this DHO this contraband belonged to anyone other than yourself. Given the greater weight of this evidence, no information was discovered to support your claim this incident report should be expunged.
>
> Based on the reporting officer's statement that staff discovered sprayed paper in your secured locker that tested positive for the presence of the narcotic substance amphetamines, the supporting statement by the staff member who discovered your narcotics in your secured locker, and the pictures of the items found in your living quarters, the DHO finds the greater weight of the evidence supports you did violate Code 113, Possession of any narcotics, of the Inmate Discipline Policy.

(Doc. No. 6-2 at 7-9.) Moreover, the DHO explained the imposed sanctions, stating:

15

> Possession of any narcotics while in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Caver's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

(*Id.* at 10.)

Caver appears to suggest that the evidence was insufficient to support the DHO's finding, arguing that the DHO failed to give "meaningful consideration" to his defense that other inmates placed the narcotics in his cell because he had previously found other contraband, such as a USB cord and an Allen tool, in his cell. (Doc. No. 1 at 5-7.) Caver argues that other inmates had placed those items in his cell, thus suggesting that other inmates were responsible for placing the narcotics there. However, when an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56). Moreover, as noted above, the DHO considered Caver's claim that he had previously "battled with quarrels with some inmates known for such devious acts"

16

and noted that, when asked, Caver refused to provide names of such inmates. (Doc. No. 6-2 at 8.) Thus, Caver came forward with no evidence to support his statement that he had been "set up" by other inmates. The fact that the DHO failed to refer to Caver's defense regarding the USB cord and Allen tool previously found in his cell does not rise to the level of a due process violation. *See Pappas v. Allenwood*, 548 F. App'x 31, 34 (3d Cir. 2013) (noting that "the fact that [an inmate] as not permitted to assert [a] defense does not rise to the level of a constitutional violation"); *see also Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"). Contrary to Caver's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of a violation of Code 113. *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). Accordingly, the Court will deny his § 2241 petition.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Caver was accorded all of his due process rights under *Wolff* and the BOP regulations, and that there was some

evidence supporting the DHO's decision. Accordingly, Caver's § 2241 petition (Doc. No. 1) will be denied. An appropriate Order follows.


                                                <u>s/Sylvia H. Rambo</u>
                                                Sylvia H. Rambo
                                                United States District Judge

Dated:       December 4, 2019